# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

SHEKU DEEN YANSANE,

Defendant.

Criminal Action No. TDC-17-0435

## MEMORANDUM OPINION

On April 17, 2018, Defendant Sheku Deen Yansane pleaded guilty to one count of Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), and one of count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). After Yansane and his counsel reviewed the Presentence Investigation Report ("PSR") and learned, to their surprise, that Yansane is not a United States citizen, Yansane moved to withdraw his guilty plea. The Court held a hearing on the Motion to Withdraw Guilty Plea on January 23, 2019. For the reasons set forth below, the Motion is granted.

## BACKGROUND

The following facts are undisputed. Yansane was born in Sierra Leone in 1983. When Yansane was six years old, he and his family moved to the United States. Specifically, in October 1989, Yansane, traveling with his mother and brother, was lawfully admitted into the United States on a nonimmigrant B-2 visa which expired in April 1990 when Yansane was still six years old. Nevertheless, since 1989, Yansane has lived his entire life in the United States, has never visited Sierra Leone, and has no meaningful ties to that country. Both of his parents

are now United States citizens, and, prior to reviewing the PSR, Yansane always believed that he was a United States citizen.

Apparently, there was some confusion between Yansane's parents, who divorced in the 1990s when Yansane was still a child, over submission of a citizenship application on behalf of Yansane. At the time of her meeting with the United States Probation Officer as part of the presentence investigation, Yansane's mother also believed Yansane to be a United States citizen and thought that his father, who was sporadically involved in Yansane's upbringing, had taken care of the citizenship application process for Yansane. However, a review of immigration records prompted by the presentence investigation revealed no documentation of any citizenship application submitted on behalf of Yansane by his father. Over the past 20 years, Yansane has been convicted of multiple of crimes in Maryland state courts and the Superior Court of the District of Columbia, but, throughout all of those proceedings, no court or law enforcement agency, state or federal, has ever determined that Yansane is not a United States citizen or notified him that he might face deportation for his crimes.

On August 9, 2017, Yansane was charged in a two-count Indictment with Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). At Yansane's initial appearance on August 29, 2017, an attorney from the Office of the Federal Public Defender was appointed to represent Yansane. Yansane advised his counsel that he was not born in the United States but that he was a United States citizen. The Government and the United States Probation and Pretrial Services Office also believed that Yansane was a United States citizen.

The Government and Yansane's counsel then engaged in plea negotiations and jointly requested three extensions of the pre-trial motions deadline to allow time for their discussions.

On March 15, 2018, the parties executed a plea agreement. Among the provisions of the plea agreement was the following:

> By pleading guilty, the Defendant will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, convictions for a broad range of crimes can lead to adverse immigration [consequences], including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

Plea Agreement ¶ 4(h), ECF No. 47.

The Court then held a guilty plea hearing under Federal Rule of Criminal Procedure 11 on April 17, 2018. During the hearing, the Court asked Yansane if he was a United States citizen, and Yansane stated that he was. The Court also advised Yansane:

> THE COURT: I know you stated you are a U.S. citizen, but I should tell you that if someone is not a U.S. citizen, that person, by pleading guilty could have—there could be an impact on that person's residency or status with immigration authorities, including that it may provide a basis for deportation or exclusion or may prevent someone from becoming a U.S. citizen. Do you understand that?
>
> THE DEFENDANT: I do.

Plea Hrg. Tr. at 16, ECF No. 68. The Court accepted Yansane's plea of guilty to both counts of the Indictment and issued an expedited sentencing order, setting sentencing for June 11, 2018.

On May 24, 2018, the probation officer issued the PSR, which, as discussed above, advised Yansane, his counsel, and the Government for the first time that Yansane is not actually a United States citizen, he does not have legal status in the United States, and a U.S. Immigration and Customs Enforcement detainer was forthcoming. After promptly visiting Yansane and showing him the PSR, Yansane's counsel filed a Consent Motion to Continue Sentencing on

May 29, 2018, in which he stated that the PSR "contained an unexpected and potentially very serious assertion" regarding Yansane's history which would "require investigation, including obtaining records." Consent Mot. Continue at 1, ECF No. 51. The Court granted the motion and continued the sentencing hearing.

On June 21, 2018, Yansane's counsel filed the pending Motion to Withdraw Guilty Plea and a Motion to Withdraw as Counsel, noting a conflict of interest based upon Yansane's likely assertion that he did not have "the close assistance of competent counsel" in entering his plea. Mot. Withdraw Plea at 1, ECF No. 53. The Court granted counsel's request to withdraw, and new counsel was appointed to represent Yansane. The Court permitted Yansane's new counsel to file a supplemental brief in support of the Motion to Withdraw Guilty Plea, which is now ripe for disposition.

The Court held a hearing on the pending Motion on January 23, 2019. Yansane's counsel offered to present one witness, Yansane's former roommate Abdul Sesay, and represented that in support of Yansane's argument that he should be permitted to withdraw his guilty plea because the police had entered his residence before the search warrant was executed, Sesay would testify to the time that the police entered the residence shared by Yansane and Sesay to conduct the search which provided the basis for Yansane's arrest. Yansane's counsel acknowledged, however, that Sesay would offer no new information beyond the facts contained in his Declaration, attached to Yansane's reply memorandum on the Motion. The Government objected to Sesay's testimony on the ground that it would not provide a basis to grant the Motion, but acknowledged that for purposes of the Motion, it would not dispute that Sesay would testify to the facts contained in his Declaration. Because the parties agreed that the Court could consider the Declaration in resolving the Motion, the Court determined that Sesay's

4

testimony would not be necessary. Thus, no witnesses testified at the hearing, but the Court heard argument from both parties and took the Motion under advisement.

## DISCUSSION

In the Motion, Yansane requests that he be permitted to withdraw his guilty plea because he did not know at the time that he entered the guilty plea that he was not a United States citizen, and his attorney did not verify his immigration status or advise him of the immigration consequences he faced. He also argues that he should be permitted to withdraw his guilty plea because Sesay's testimony would establish that the search of his residence violated the Fourth Amendment to the United States Constitution and that a motion to suppress would be granted, such that he is legally innocent. For the reasons set forth below, the Court grants the Motion.

## I.      Legal Standard

Prior to sentencing, a defendant may withdraw a previously entered plea of guilty if there is "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000). The defendant has the burden to show that such a fair and just reason exists. *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). This is a heavy burden to carry because "[i]f an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (*en banc*).

The factors the Court should consider on whether to permit withdrawal of a guilty plea are:

1. Whether the defendant has offered credible evidence that his plea was not knowing and voluntary;

2. Whether the defendant has credibly asserted his legal innocence;

5

3. Whether there has been a delay between the entering of the plea and the filing of the motion;

4. Whether the defendant has had the close assistance of competent counsel;

5. Whether withdrawal will cause prejudice to the government; and

6. Whether withdrawal of the plea would inconvenience the court and waste judicial resources.

*See Moore*, 931 F.2d at 248. The most important factor is the first one, which addresses whether the plea colloquy was properly conducted. *United States v. Faris*, 388 F.3d 452, 456 (4th Cir. 2004). However, these factors are not exhaustive and the ultimate determination of whether a "fair and just reason" exists to warrant withdrawal of the plea is entrusted to the discretion of the district court. *Moore*, 931 F.2d at 248.

## II.    Close Assistance of Competent Counsel

The factor on which Yansane focuses the most attention is whether Yansane had the "close assistance of competent counsel." *Id.* On this issue, he argues that his first defense counsel both failed to advise him of the immigration consequences of a guilty plea and failed to check whether he was a citizen in the first place. To prevail on a motion to withdraw a guilty plea based solely on this factor, the defendant must show that: (1) defense counsel's performance fell below an objective standard of reasonableness; and (2) there was a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Ubakanma*, 215 F.3d at 425. Here, Yansane asserts this factor as one, but not the sole, basis for withdrawal.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court held that an attorney's performance falls below the objective standard of reasonableness when the attorney fails to inform a client whether a guilty plea carries a risk of deportation. *Id.* at 374. The Court

declined to limit its holding to affirmative misadvice, finding that silence or failure to inform can be just as harmful as misinformation in the context of immigration consequences. *Id.* at 370-71. At the same time, the Court noted that in situations in which the law is not succinct or straightforward, a defense attorney's obligation is merely to inform the noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. *Id.* at 369. But "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.*

Here, it is undisputed that prior counsel did not provide any specific advice to Yansane regarding the immigration consequences of a guilty plea. Although defense counsel presumably reviewed the plea agreement with Yansane, including the subparagraph stating the general warning that by pleading guilty a defendant could be subject to deportation, Yansane's case is not one in which the law is complex and the likelihood of removal is uncertain, such that a general warning would be sufficient. *See Padilla*, 559 U.S. at 369; *see id.* at 375 (Alito, J. concurring in the judgment). Instead, Yansane's conviction for possession with intent to distribute marijuana automatically renders Yansane deportable as "any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of . . . the United States . . . relating to a controlled substance," other than a single possession of marijuana offense involving 30 grams or less. 8 U.S.C. § 1227(a)(2)(B)(i) (2012). Likewise, Yansane's conviction for possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1) automatically makes him deportable as "any alien who at any time after admission is convicted under any law of . . . possessing . . . any weapon, part, or accessory which is a firearm or destructive device." 8 U.S.C. § 1227(a)(2)(C). Furthermore, each offense is classified as an "aggravated felony" under the Immigration and Nationality Act. *See* 8 U.S.C. § 1101(a)(43)(E)(ii) (defining "aggravated

felony" as including an offense under 18 U.S.C. § 922(g)(1)); *Moncrieffe v. Holder*, 569 U.S. 184, 188 (2013) (holding that "a noncitizen's conviction of an offense that the Controlled Substances Act . . . makes punishable by more than one year's imprisonment will be counted as an 'aggravated felony' for immigration purposes"); 21 U.S.C. § 841(b)(1)(D) (stating that a conviction for possession with intent to distribute less than 50 kilograms of marijuana is punishable by up to five years of imprisonment). Classification as an aggravated felony not only provides another basis for deportation, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), but renders deportation mandatory. *See Lee v. United States*, 137 S. Ct. 1958, 1963 (2017) (stating that "a noncitizen convicted of an [aggravated felony] is subject to mandatory deportation"). Thus, there can be no dispute that Yansane's first defense counsel failed to meet the strict mandate of *Padilla*: he did not advise his noncitizen client that pleading guilty to the charged offenses would automatically render him deportable under 8 U.S.C. § 1227(a)(2).

The Government argues that defense counsel acted objectively reasonably because he had no reason to doubt Yansane's belief that he was a United States citizen and therefore had no reason to warn him of the immigration consequences of a guilty plea. However, the Government also concedes that counsel was aware that Yansane was not born in the United States and thus had an immigration history. Given that knowledge and the fact that Yansane was pleading guilty to an offense that would almost certainly result in his deportation, and where counsel likely could have discovered Yansane's immigration status, just as the probation officer did, without significant difficulty, there is, at a minimum, a serious question whether defense counsel's failure to inquire further was deficient. Thus, without concluding that the failure to verify a foreign-born defendant's immigration status would always be deficient performance, under the unique circumstances of this case, the Court cannot find that the failure to advise Yansane that a guilty

plea would render him automatically deportable was objectively reasonable and constituted "the close assistance of competent counsel." *See Moore*, 931 F.2d at 248.

As for whether there was a reasonable probability that but for this omission, Yansane would not have pleaded guilty and would have insisted on going to trial, *Ubakanma*, 215 F.3d at 425, the Government notes first that the plea agreement and the Court's plea colloquy effectively cured any lack of legal advice by defense counsel by informing Yansane that if he was not a citizen, he could face deportation. Under *Padilla*, however, such general advice that a conviction "may carry a risk of adverse immigration consequences," while sufficient to meet the specific requirement of Rule 11, would not be sufficient legal advice in a case where deportation is straightforward and certain. *Padilla*, 559 U.S. at 369. Thus, whether it came from the Court, the plea agreement, or defense counsel, such general advice is insufficient under the present facts to cure the prejudice arising from the lack of a more specific warning. *Cf. United States v. Akinsade*, 686 F.3d 248, 250, 255 (4th Cir. 2012) (finding that the court's statement that "if you are not a citizen, you could be deported" was not sufficient to cure misadvice of counsel on the immigration consequences of a conviction).

The Government also argues, citing *United States v. Sinclair*, 409 F. App'x 674 (4th Cir. 2011), that because Yansane has no legal status in the United States, he will be deported regardless of whether he is found guilty of the charged offenses and thus had no incentive to go to trial. However, *Sinclair* and other cases cited for this proposition pre-date *Lee v. United States*, 137 S. Ct. 1958 (2017), in which the Supreme Court emphasized the rationality of a defendant's decision to go to trial when faced with deportation. In *Lee*, the Court held that where a noncitizen defendant was provided the erroneous legal advice that he would not be deported if he pleaded guilty to an aggravated felony, the fact that he faced almost certain

conviction at trial did not prevent a finding of prejudice because such a defendant may have rationally insisted on going to trial "if that individual had strong connections to this country and no other" and pleading guilty would "certainly" lead to deportation, but there was "some chance of avoiding deportation" after trial. *Id.* at 1968-69.

Although the defendant in *Lee*, as a lawful permanent resident, would no longer be deportable if acquitted after trial, under the analysis set forth in *Lee*, Yansane, even though likely subject to deportation based on his present lack of legal status, could still rationally choose to go to trial. As in *Lee*, Yansane came to the United States as a child, at the age of six, and has no significant ties to his country of birth. His guilty plea to felon-in-possession of a firearm and possession with intent to distribute marijuana, both aggravated felonies, renders him as certain to be deported as the defendant in *Lee*. *See Lee*, 137 S. Ct. at 1963 (stating that "a noncitizen convicted of an [aggravated felony] is subject to mandatory deportation"). Thus, even though his lack of legal status in the United States would provide a basis for deportation, conviction of an aggravated felony carries more certain immigration consequences than other crimes and circumstances that render a non-citizen deportable under 8 U.S.C. § 1227. *See Moncrieffe*, 569 U.S. at 187. For example, a person convicted of an aggravated felony is subject to expedited removal proceedings before release from custody for the aggravated felony and is ineligible to apply for certain discretionary forms of relief from removal, such as asylum and cancellation of removal. 8 U.S.C. §§ 1228(a)(3)(A); 1229b(a)(3), (b)(1)(C); 1158(b)(2)(A)(ii), (B)(i); *see also Moncrieffe*, 569 U.S. at 187. Where Yansane could rationally conclude that there remains "some chance of avoiding deportation" by going to trial and pursuing various forms of immigration relief, as compared to no possibility after a guilty plea, *Lee*, 137 S. Ct. at 1968-69, the Court

cannot conclude that the lack of legal advice on immigration consequences did not prejudice him.

Although the Government notes that Yansane's other prior convictions likely render him deportable, at the hearing on the Motion, the Government was unable to state definitively that any of his prior convictions is an aggravated felony. Regardless of their seriousness, the certainty of deportation absent convictions on the charged offenses is undermined by the undisputed fact that Yansane has lived in the United States without immigration consequences for years following those convictions. Unlike in *United States v. Donjuan*, 720 F. App'x 486 (10th Cir. 2018), cited by the Government, in which the defendant had already received a Notice to Appear for removal proceedings before he entered his guilty plea, *id.* at 490, it is undisputed that at the time of Yansane's guilty plea, no immigration proceedings had been instituted, and no ICE detainer had been lodged against Yansane based on his prior convictions. Where all parties agree that, by contrast, deportation is certain if Yansane's convictions on the charged offenses remain intact, the Court finds that Yansane's stated intention to go to trial is rational, particularly where he claims to have a viable argument for suppression of the evidence in this case. Accordingly, the close assistance of counsel factor weighs in favor of permitting Yansane to withdraw his plea.

### III. Knowing and Voluntary Plea

Under the highly unusual facts of this case, when Yansane pleaded guilty, he labored under a very significant mistake of fact: he believed that he was a United States citizen. It is undisputed that Yansane came to the United States as a young child of parents who both later obtained U.S. citizenship for themselves, and that with his parents having divorced, there was an apparent misunderstanding under which Yansane's mother believed that Yansane's father had

filed a successful citizenship application for Yansane. Yansane was told that he was a United States citizen, a belief which was bolstered by the fact that as he accrued a lengthy criminal record, he was never challenged on his citizenship status and never faced adverse immigration consequences from his state court convictions. The Government, although given the opportunity, has not contested these facts or the conclusion that Yansane's belief that he was a United States citizen was honestly and reasonably held. Indeed, the Government itself believed that he was a United States citizen until the PSR was issued.

Because he had this mistaken belief, the Court finds that at the time that Yansane pleaded guilty, he did not understand the immigration consequences he faced upon conviction. The fact that the Court and the plea agreement generally notified him that a noncitizen who pleads guilty could face deportation and other immigration consequences did not cure his misunderstanding. Where Yansane had an honest and reasonable belief that he was a U.S. citizen, such warnings did not actually put him on notice that he could face deportation upon conviction, much less that based on the charged crimes, he actually faced an effective certainty that he will be deported after conviction. *See Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (stating that "the purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision . . . .").

The issue is whether because of Yansane's failure to understand the immigration consequences of his guilty plea, the plea was not a "knowing" plea. Rule 11 sets out the information a court is to convey to ensure that a defendant who pleads guilty understands the charges at issue and the consequences of a guilty plea. *United States v. Nicholson*, 676 F.3d 376, 381 (4th Cir. 2012). In order for a plea to be knowing and voluntary, "a defendant must be made aware of all of the direct but not the collateral consequences of his plea." *Id.* A consequence is

collateral if it is "uncertain or beyond the direct control of the court." *Id.* Prior to the Supreme Court's decision in *Padilla*, the United States Court of Appeals for the Fourth Circuit had found that deportation is a collateral consequence. *See, e.g., Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973).

However, *Padilla* held, in the context of a Sixth Amendment ineffective assistance of counsel claim, that "because of its close connection to the criminal process," deportation is "uniquely difficult to classify as either a direct or a collateral consequence" of a criminal conviction. *Padilla*, 559 U.S. at 366. In so concluding, the Court noted the "unique nature of deportation" as a "particularly severe penalty," that "deportation is . . . intimately related to the criminal process," and that it is "most difficult to divorce the penalty from the conviction in the deportation context," especially where "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* (citations omitted). As the Fourth Circuit has since noted *in dicta, Padilla* did not directly address the status of deportation as a direct or collateral consequence for purposes of establishing a knowing and voluntary guilty plea. *See Nicholson*, 676 F.3d at 382 n.3. Nevertheless, its conclusion that deportation is not easily classified as either direct or collateral raises a substantial question whether a defendant must understand the immigration consequences of a conviction for a guilty plea to be knowing.

Significantly, in recognition of the logical connection between *Padilla*'s reasoning and the guilty plea context, Rule 11 was amended to require judges to provide a general notice to all defendants pleading guilty that "a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." *See* Fed. R. Crim. P. 11(b)(1)(O); Report of Advisory Committee on Criminal Rules

(Dec. 8, 2010). Subsequently, the United States Court of Appeals for the Sixth Circuit, while stating that the rule change was not mandated by *Padilla*, vacated a guilty plea by a Syrian immigrant who had become a naturalized citizen after the alleged crime because the district court had failed to give him this admonition such that he did not know that he could face denaturalization. *See United States v. Ataya*, 884 F.3d 318, 326 (6th Cir. 2018).

Thus, while neither the Supreme Court nor Fourth Circuit has specifically held that the immigration consequences of a conviction are among the consequences that must be understood by the defendant in order for a guilty plea to be a knowing plea, *Padilla* and Rule 11(b)(1)(O) reflect a growing recognition of the critical importance of a defendant understanding such consequences. Accordingly, the Court finds that where Yansane has demonstrated that his false but reasonable belief that he was a U.S. citizen rendered him incapable of understanding the actual immigration consequences of his guilty plea, he has, at a minimum, presented credible evidence that raises a serious question whether his plea was entered knowingly. Accordingly, this factor, to a limited degree, weighs in favor of permitting Yansane to withdraw his plea.

## IV.     Legal Innocence

Yansane argues that he should be permitted to withdraw his guilty plea because he has offered evidence of his legal innocence. A defendant's admission to the crime during the plea colloquy is presumptively accurate. *See United States v. Bowman*, 348 F.3d 408, 414-15 (4th Cir. 2003). Accordingly, for a defendant to credibly assert his legal innocence, he must "present evidence that (1) has the quality or power of inspiring belief . . . and (2) tends to defeat the elements in the government's prima facie case or to make out a successful affirmative defense." *United States v. Thompson-Riviere*, 561 F.3d 345, 353 (4th Cir. 2009) (internal citations omitted).

Here, Yansane asserts that Sesay is prepared to testify that the police entered their residence before the search warrant was executed, such that he would prevail on a motion to suppress the evidence found during the search, which includes the firearm and marijuana that are the subject of the charged crimes. Because Yansane contends that he could not be convicted if that evidence is suppressed, he argues that Sesay's testimony amounts to evidence of his legal innocence.

At a first level, Yansane has not satisfactorily explained why this evidence was not previously offered. He acknowledges that before he pleaded guilty, he was generally aware that Sesay was at the residence at the time of the search and could provide this testimony, but when Sesay was out of the country and not readily available to testify, he chose to just plead guilty rather than file a motion to suppress and seek a continuance until Sesay returned.

Regardless, Yansane's claim that he now has evidence of legal innocence fails because a potentially successful motion to suppress is not equivalent to an assertion of legal innocence. See *United States v. Wintons*, 468 F. App'x 231, 233 (4th Cir. 2012) (holding that "suppression of evidence does not amount to legal innocence"); *United States v. Neal*, 230 F.3d 1355 (4th Cir. 2000) (unpublished) (holding that a belated desire to file a motion to suppress does not constitute a credible assertion of legal innocence warranting withdrawal of a guilty plea); *Vasquez v. United States*, 279 F.2d 34, 35-37 (9th Cir. 1960) (affirming the denial of a motion to withdraw a guilty plea when the defendant argued that he had discovered after the plea that he might have a meritorious legal defense through a suppression motion).

Accordingly, the Court need not consider the credibility of Sesay's potential testimony nor the likely success of any motion to suppress filed by Yansane to conclude that this factor does not weigh in favor of permitting Yansane to withdraw his guilty plea.

## V.    Delay

Courts have not defined the specific amount of time that constitutes an improper delay for a motion to withdraw a guilty plea, in part because the inquiry is fact-specific. *Compare Bowman*, 348 F.3d at 416 (finding a delay of three months not prejudicial to the Government) *with United States v. Ramos*, 810 F.2d 308, 313 (1st Cir. 1987) (finding a delay of 13 days too long). In this case, Yansane pleaded guilty on April 17, 2018. The PSR was issued on May 24, 2018, and Yansane's counsel filed a Motion to Continue Sentencing, referencing the issue of Yansane's citizenship first raised in the PSR, on May 29, 2018. Counsel then filed a Motion to Withdraw Guilty Plea on June 21, 2018. Thus, there was a delay of approximately two months between when Yansane pleaded guilty and when he moved to withdraw his plea. However, the circumstances giving rise to Yansane's desire to withdraw his plea—the issuance of the PSR with the first information that Yansane is not a United States citizen—did not take place until over a month after Yansane pleaded guilty. Of course, Yansane had no control over the timing of the issuance of the PSR. Just five days after receiving the PSR, former defense counsel filed a Motion to Continue Sentencing to allow time to investigate the issue of Yansane's citizenship. The Government consented to this Motion at the time, undercutting the credibility of its claim now of undue delay. After less than a month of investigation, the Motion was filed.

Under these circumstances, the Court finds that this delay was neither significant nor prejudicial because most of the delay was attributable to the preparation of the PSR, once Yansane learned that he was not a citizen he almost immediately sought the limited time necessary for his counsel to research the issue, and the Government consented to that continuance. Accordingly, this factor weighs in favor of permitting Yansane to withdraw his guilty plea.

## VI.    Prejudice and Waste of Resources

Withdrawal of a guilty plea "almost invariably prejudices the government to some extent and wastes judicial resources," so "the fifth and sixth factors can weigh in the defendant's favor so long as she shows that the magnitudes of the prejudice and inconvenience are small; the defendant need not show that the effects will be nonexistent." *United States v. Sparks*, 57 F.3d 1145, 1154 n.5 (4th Cir. 1995). Here, the Government's argument in favor of prejudice and waste of resources is that Yansane was indicted over a year ago, and witness memories may fade due to the passage of time since the crimes occurred. Notably, however, most of the eight months between the indictment and Yansane's guilty plea was assented to by the Government. The primary reason for that passage of time was the parties' three joint motions to extend the motions deadline and exclude time to allow for productive plea discussions. No trial date was set, and there is no evidence that the Government expended significant resources on trial preparation. *See, e.g.*, *United States v. Brown*, 617 F.2d 54, 55 (4th Cir. 1980) (per curiam) (finding prejudice to the Government when trial preparation had been dismantled and 17 government witnesses had just been given notice not to appear).

Although the additional nine months since the guilty plea arguably could adversely affect the Government's ability to present its evidence, this case primarily relies upon evidence from a search of Yansane's home, and the primary witnesses will be law enforcement officers. Thus, unlike in other cases requiring the testimony of a multitude of civilian witness, the Government is not likely to have significant difficulties in locating its witnesses and presenting its case. Where a trial in this case would not be lengthy or complex, the impact on judicial resources, while important, is not unusually burdensome. Accordingly, the Court finds that these factors do not weigh significantly against allowing Yansane to withdraw his plea.

## VII.  Weighing the Factors

Under *Moore*, the Court must weigh all six factors and need not find that any particular factor has been established definitively in favor of the defendant in order to set aside a guilty plea. *Moore*, 931 F.2d at 248. "The consideration of these factors is not a rigidly mechanistic test, for the conspicuous fuzziness of [the] operative terms—'fair and just'—precludes such an endeavor." *Thompson-Riviere*, 561 F.3d at 348 (quoting *Sparks*, 67 F.3d at 1154). Regardless of whether Yansane's guilty plea failed to meet the strict definition of a knowing plea and whether Yansane's defense counsel's performance formally qualifies as ineffective assistance of counsel, this unique set of facts raises serious concerns on both factors and thus casts doubt on the fundamental fairness of refusing to allow Yansane to withdraw his guilty plea. Here, Yansane entered into the plea agreement under a significant mistake of fact. Indeed, both he and the Government were not aware of his citizenship and executed the agreement under the false belief that Yansane would face prison time but not deportation as a result of his plea. "As contracts, plea agreements are voidable when both parties make a mistake 'as to a basic assumption on which the contract was made,' that mistake 'has a material effect on the agreed exchange of performances,' and the party seeking to voice the contract does not 'bear[] the risk of the mistake.'" *United States v. Johnson*, __ F. 3d. __, No. 18-4345, 2019 WL 452780, at *8 (4th Cir. Feb. 6, 2019) (published) (citing Restatement (Second) of Contracts § 152 (Am. Law Inst. 1981; October 2018 Update)). Where the mistake substantially impacted both whether Yansane acted knowingly and whether he received the close assistance of competent counsel, fairness requires Yansane to be able to make a decision based on the actual facts at hand.

When all six factors are considered, including the limited delay before the Motion was filed, and the lack of significant prejudice to the Government and impact on judicial resources,

the Court, considering all the evidence before it and its duty to use its discretion to determine whether permitting withdrawal will serve the interests of fairness and justice, finds that Yansane's Motion to Withdraw Guilty Plea should be granted.

## CONCLUSION

For the foregoing reasons, Yansane's Motion to Withdraw Guilty Plea is GRANTED. A separate Order shall issue.


Date:  February 26, 2019

THEODORE D. CHUANG
United States District Judge